IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF TENNESSEE
KNOXVILLE DIVISION

| | | |
|---|---|---|
| JILL ELLIS, TREDA ANDERSON, and QUINTON WALLER, | : : | |
| Plaintiffs, | : : | Civil Action No.: |
| v. | : : | JURY TRIAL DEMANDED |
| VOLUNTEER STATE HEALTH PLAN, INC. d/b/a BLUECARE TENNESSEE, | : : : : | |
| Defendant. | : | |

## COMPLAINT

Plaintiffs Jill Ellis, Treda Anderson, and Quinton Waller, through counsel, hereby file this Complaint against Volunteer State Health Plan, Inc. d/b/a BlueCare Tennessee ("BlueCare") and allege violations of the National Defense Authorization Act ("NDAA"), 41 U.S.C. § 4712, and the Tennessee Public Protection Act ("TPPA"), Tenn. Code § 50-1-304, as follows:

## NATURE OF THE CASE

1. Plaintiffs Ellis, Anderson, and Waller contend that BlueCare terminated their employment with BlueCare because they refused to participate in or remain silent about illegal activities conducted by BlueCare in violation of the TPPA, and as reprisal for reporting information that they reasonably believed was evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal Funds, an abuse of authority relating to a Federal contract or grant, and/or a violation of law, rule, or regulation related to a Federal contract or grant the NDAA.

## JURISDICTION AND VENUE

2. The NDAA authorizes aggrieved employees to file a civil action to recover damages for violation of their rights under the NDAA. 41 U.S.C. § 4712 (2). This court has subject matter jurisdiction over this action under 28 U.S.C. § 1331.

3. The TPPA authorizes aggrieved employees to file a civil action to recover damages for violation of their rights under the TPPA. Tenn. Code § 50-1-304(c)(1 and 2). This court has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

4. Venue is proper in this judicial district as the events giving rise to this action occurred within this district.

5. Plaintiffs previously filed this action in the Circuit Court for Knox County, in the State of Tennessee (Case No. 27323). However, the Plaintiffs took a voluntary non-suit and dismissed their state action pursuant to Tenn. R. Civ. P. 41.01 by order entered on October 26, 2023. Tenn. Code Ann. § 28-1-105, commonly referred to as Tennessee's "Savings Statute," allows for the refiling of an action within one year of taking a voluntary non-suit. Plaintiffs are now refiling this action in this Court, as permitted by the Tennessee statute and in compliance with all applicable federal statutes governing jurisdiction and venue.

## PARTIES

5. Plaintiff Ellis is an adult citizen of the state of Tennessee and resides in Knoxville, Knox County, Tennessee.

6. Plaintiff Anderson is an adult citizen of the State of Tennessee and resides in Johnson City, Washington County, Tennessee.

7. Plaintiff Waller is an adult citizen of the state of Tennessee and resides in Bartlett, Shelby County, Tennessee.

8. Defendant BlueCare is a Tennessee corporation having its principal office at Chattanooga, Hamilton County, Tennessee.

9. At all relevant times herein, BlueCare was an employer as defined by the TPPA. Tenn. Code § 50-1-304 (a)(2)(B).

10. At all relevant times herein, BlueCare was subject to the prohibitions imposed by TPPA with respect to termination of employees for refusal to participate in, or refusal to remain silent about illegal activity. Tenn. Code § 50-1-304 (b).

11. At all relevant times herein, BlueCare held a contract with the State of Tennessee to administer Medicaid benefits for Tennessee's citizens via Tennessee's TennCare Program.

12. At all relevant times herein, because the State of Tennessee, particularly the TennCare program, received funds from the Government of the United States to subsidize TennCare's Medicaid programs, BlueCare was a contractor, subcontractor, grantee or subgrantee of the United States Federal Government. 41 U.S.C. § 4712.

13. At all relevant times herein, BlueCare was subject to the provisions of the National Defense Authorization act regarding retaliation. 41 U.S.C. § 4712.

14. At all relevant times herein, Ellis was an employee of BlueCare as defined by the TPPA and the NDAA.

15. At all relevant times herein, Anderson was an employee of BlueCare as defined by the TPPA and the NDAA.

16. At all relevant times herein, Waller was an employee of BlueCare as defined by the TPPA and the NDAA.

# FACTUAL ALLEGATIONS

17. On October 7, 2019, Anderson commenced employment with BlueCare as a Member Resource Coordinator ("MRC").

18. In October 2019, Waller commenced employment with BlueCare as an MRC.

19. On January 11, 2021, Ellis commenced employment with BlueCare as an MRC.

20. During the course of Ellis's employment with BlueCare, Ellis worked remotely from her home in Knoxville, Knox County, Tennessee.

21. During the course of Anderson's employment with BlueCare, Anderson worked remotely from her home in Johnson City, Washington County, Tennessee.

22. During the course of Waller's employment with BlueCare, Waller worked remotely from his home in Bartlett, Shelby County, Tennessee.

23. During the course of their employment with BlueCare, Ellis, Anderson, and Waller frequently reported to their supervisors and to BlueCare's Compliance Department concerns about illegal conduct on the part of BlueCare with respect to its contractual relations with the TennCare Medicaid Program, including but not limited to:

   A. Permitting or requiring non-clinical staff to speak with members about medical issues that they are unqualified to address;

   B. Calculating call data without using TN Health Link, causing reporting of phantom appointments and inflated appointment numbers;

   C. Providing MRCs incorrect information to give to patients;

   D. Merely texting three resources in response to patient calls, rather than providing meaningful clinical patient assistance;

E. Regularly violating the federal Health Insurance Portability and Accountability Act ("HIPAA") in the following ways:

  i. By disclosing protected health information to persons other than patients;

  ii. MRCs were instructed to discuss protected health information with anyone on a drop-down list who answered the phone as long as they could verify the member's date of birth and address. The drop-down list in the call script included a member's parent, child, ex-spouse, neighbor, friend, and other loose associations;

  iii. MRCs were discouraged from taking proper steps to confirm that an adult on the phone had legal custody of a minor member and were required to simply accept a caller's representation concerning child custody status;

  iv. MRCs were discouraged from doing research in advance of calls to learn whether, among other things, a minor member was pregnant (HIPAA regulations prohibited MRCs from talking to a parent or custodian of a pregnant 16 or 17 year old member without the member's permission).

F. Requiring MRCs to follow a 3-minute limit between calls, thereby preventing MRCs from conducting necessary research to properly advise patients;

G. BCBS TN's practice of counting as contacts unanswered calls or calls made to incorrect numbers, resulting in false reporting of the number of compensable appointments;

H. Failure to follow the ICT Wheel that had been submitted to TennCare; and

    I. Failure to adequately train MRCs with respect to recognizing and reporting child abuse over the phone, and failure to follow Tennessee legal requirements with respect to mandated reporting of child abuse.

24. Each of these practices violate BlueCare's contract with TennCare, which requires, among other things, that BlueCare certify to TennCare the accuracy, truthfulness, and completeness of its data and comply with federal regulations regarding HIPAA.

25. Each of the aforementioned practices constitutes illegal activity as defined by the TPPA. Tenn. Code § 50-1-304 (a)(3)(A).

26. Each of the aforementioned practices constitutes a violation of law, rule, or regulation related to a Federal contract (including the competition for or negotiation of a contract) or grant, as set forth in the NDAA. 41 U.S.C. § 4712.

27. Anderson reported her concerns of wrongdoing to Don Provonsha, BlueCare's Manager of Professional Standards in Defendants' Compliance Department.

28. Provonsha began calling Anderson approximately three times a week to discuss Anderson's concerns about wrongdoing.

29. Provonsha told Anderson that Provonsha reported Anderson's concerns to Defendants' Privacy Department.

30. Provonsha told Anderson that Defendants were "absolutely breaking HIPAA."

31. In December 2021, Provonsha informed Anderson that Provonsha had reported BlueCare's compliance issues to TennCare and the Tennessee Bureau of Investigation ("TBI").

32. Ellis reported concerns about HIPAA violations to her supervisor, Alexis Street ("Street").

33. Street falsely informed Ellis that the BlueCare legal department had reviewed and approved the processes in place regarding HIPAA.

34. In response to Ellis's reports to Street, BlueCare sent an email to the MRCs instructing them to just talk to the person on the phone regardless of any HIPAA concerns about verification of identity or authority to receive medical information.

35. In May 2021, MRC Manager Gail Winton directed Anderson, Ellis, Waller, and the other MRC not to speak with BlueCare's Compliance Department.

36. During the May 2021 conversation, Winton informed the MRCs that Winton could tell from the human resources ("HR") department's summaries of complaints that HR had talked to all four of the MRCs.

37. During the May 2021 conversation, Winton informed the MRCs that Winton was aware that conversations had been going on between MRCs, HR, and the Compliance Department since January 2021 and indicated that "it needs to stop."

38. Ellis reported Winton's directive that MRCs not speak with the Compliance Department to Kelly Scoggins ("Scoggins"), Defendants' Manager of Corporate Compliance.

39. Scoggins admitted to Ellis that Winton's directive was "mildly retaliatory."

40. Following the conversation with Ellis, Scoggins sent a Teams message indicating that Ellis's complaint was added to another employee's complaint that was under review and investigation.

41. Subsequently, the entire MRC team, along with Health Navigators and all other subordinate employees reporting to Alexis Street, were called to a meeting with Mark Holland ("Holland").

42. Holland informed the MRCs that the purpose of the meeting was to address the complaints and to reduce calls to the Compliance Department. Holland stated that there were a lot of complaints coming from that department and he wanted "to get to the bottom of it."

43. Holland asserted that the meeting was confidential.

44. The MRCs did not believe Holland's assertions about confidentiality.

45. During this time, the MRCs and other employees feared retaliation and believed they would be fired for speaking out. One of the Health Navigators expressed fear that the meeting would not be kept confidential and that statements made in the meeting would spark retaliation.

46. Other staff members told Ellis that, when an MRC made complaints about legal compliance, management would scrutinize that MRC's work, including minute-by-minute analysis of MRC work time, in an effort to generate an excuse to terminate the MRC's employment.

47. Ellis told Provonsha about the fears of retaliation.

48. Provonsha told Ellis that there would be no retaliation and, if confronted about the minutes spent talking with Provonsha, Ellis should "just tell them you were talking with me."

49. In February 2022, Provonsha informed Anderson that Provonsha had presented Anderson's allegations of wrongdoing to the CEO and the CEO's staff.

50. On March 9, 2022 Provonsha asked Anderson, Ellis, and Waller to discuss their compliance concerns during an online Teams meeting with over 35 participants. Anderson, Ellis, and Waller did voice their concerns about illegal conduct during the meeting.

51. During the March 9, 2022 Teams meeting, BCBS TN Director of Member Outreach Services Cheri Moreland rationalized and dismissed Anderson's, Ellis's, and Waller's concerns.

52. Following the March 9, 2022 Teams meeting, Winton continued to disregard complaints of illegal activity voiced by Anderson and Ellis regarding phantom appointments, stating, "we are setting the appointments. End of story." Anderson and Ellis understood this to mean that phantom appointments would be set that falsely inflated BlueCare's appointment numbers to be reported to TennCare.

53. On April 19, 2022, Anderson was called to a meeting with Naomi Clarke of BlueCare's HR Department.

54. During the April 19, 2022 meeting, Clarke informed Anderson that Anderson was to be suspended for being off the phone for too long between client calls.

55. Anderson replied to Clarke that Anderson was off the phone at Provonsha's direction in order to speak with a licensed social worker, Lori Johnson, who was assisting the Compliance Department in its investigation of the allegations of wrongdoing.

56. Anderson further informed Clarke that Provonsha had directed Anderson not to answer questions about the conversations with Johnson and to refer any questions to Provonsha.

57. Anderson told Clarke that Anderson followed Provonsha's instructions.

58. Clarke responded that Anderson was "being suspended because we are going to teach you a lesson."

59. Clarke asserted that the reason for the suspension was not getting supervisor permission to be off the phone during the time Anderson was speaking with Johnson.

60. Clarke told Anderson that when Anderson returned from suspension, Anderson would handle only calls assigned to Anderson by Street and that Anderson would not be permitted to speak with anyone else.

61. Anderson asked to appeal the suspension but was not permitted to do so.

62. During April of 2022, Provonsha contacted Waller about mistreatment of staff members.

63. Waller responded that Anderson and Ellis were treated inappropriately.

64. During the April 2022 conversation, Waller expressed to Provonsha Waller's concerns about HIPAA violations.

65. On June 23, 2022, Anderson reported her concerns about illegal activity by BlueCare to the TBI.

66. On June 28, 2022, BlueCare terminated Anderson, Ellis, and Waller.

67. On March 22, 2023, Plaintiffs Anderson, Ellis, and Waller filed a formal complaint with the United States Department of Health and Human Services' Office of Inspector General ("OIG"), reporting the unlawful conduct as described in this complaint.

68. More than 210 days have passed since the filing of the Plaintiffs' complaint with the OIG. The OIG has not issued an order, nor has it requested an extension of time to do so. This delay is not due to any bad faith on the part of the Plaintiffs. Accordingly, Anderson, Ellis, and Waller have exhausted all administrative remedies with respect to the complaint filed with the OIG. 41 U.S.C. § 4712 (2).

69. BlueCare asserted that it was eliminating Anderson's, Ellis's, and Waller's positions in order to "reduce expenses and increase operations."

70. BlueCare continued to advertise the plaintiffs' positions online after the positions were allegedly eliminated and until at least September 9, 2022.

71. Upon information and belief, TBI is conducting an ongoing investigation of illegal activity by BlueCare.

# CLAIMS FOR RELIEF

## COUNT I
Violation of Tennessee Public Protection Act
Tenn. Code § 50-1-304

72. Ellis, Anderson, and Waller were employees of BlueCare.

73. Ellis, Anderson, and Waller refused to participate in, and refused to remain silent about, illegal activities on the part of BlueCare.

74. BlueCare discharged Ellis, Anderson, and Waller.

75. Ellis's, Anderson's, and Waller's refusal to participate in, and refusal to remain silent about, illegal activities on the part of BlueCare is the exclusive causal reason for Defendants' discharge of Ellis, Anderson, and Waller.

76. BlueCare's actions violated the TPPA.

77. BlueCare is liable to Ellis, Anderson, and Waller for its violations of the TPPA.

78. As a direct and proximate result of BlueCare's termination of Ellis, Ellis has suffered and continues to suffer the following harms:

   A. Lost wages,

   B. Lost retirement contributions,

   C. Lost Basic Life (non-taxable and taxable) benefits,

   D. Lost Medical and Dental benefits,

   F. Lost Long Term Disability Benefits,

   G. Lost Retirement Accumulation Program benefits,

   H. Lost bonuses,

   I. Lost overtime pay,

   J. Front pay and benefits, in an as yet unliquidated amount, and

K. Emotional distress and humiliation.

79. As a direct and proximate result of BlueCare's termination of Anderson, Anderson has suffered and continues to suffer the following harms:

 A. Lost wages,

 B. Lost retirement contributions and investment growth,

 C. Lost Basic Life (non-taxable and taxable) benefits,

 D. Lost Medical and Dental benefits,

 F. Lost Long Term Disability Benefits,

 G. Lost Retirement Accumulation Program benefits,

 H. Lost bonuses,

 I. Lost overtime pay,

 J. Front pay and benefits, in an as yet unliquidated amount, and

 K. Emotional distress and humiliation.

80. As a direct and proximate result of BlueCare's termination of Waller, Waller has suffered and continues to suffer the following harms:

 A. Lost wages,

 B. Lost retirement contributions,

 C. Lost Basic Life (non-taxable and taxable) benefits,

 D. Lost Medical and Dental benefits,

 F. Lost Long Term Disability Benefits,

 G. Lost Retirement Accumulation Program benefits,

 I. Lost overtime pay,

 J. Front pay and benefits, in an as yet unliquidated amount, and

K. Emotional distress and humiliation.

## COUNT II
Violation of the National Defense Authorization Act
41 U.S.C. § 4712

81. The National Defense Authorization Act, 41 U.S.C. § 4712, prohibits retaliation against employees of federal contractors for disclosing violations of federal laws related to a federal contract or grant.

82. Ellis, Anderson, and Waller were at-will employees of BlueCare.

83. BlueCare, by virtue of its contract with the State of Tennessee to administer the state's TennCare Medicaid program, is subject to the provisions of the NDAA regarding retaliation.

84. BlueCare, by virtue of its contract with the State of Tennessee to administer the state's TennCare Medicaid program, is subject to federal laws and regulations, including HIPAA.

85. Ellis, Anderson, and Waller reported to Provonsha and various other supervisors and managers information that they reasonably believed was evidence of gross mismanagement of a Federal contract or grant, a gross waste of Federal Funds, an abuse of authority relating to a Federal contract or grant, and a violation of law, rule, or regulation related to a Federal contract or grant.

86. Provonsha and the other supervisors and managers to whom Plaintiffs made these reports were management officials or other employees of BCBS who had the responsibility to investigate, discover, or address misconduct.

87. BlueCare discharged Ellis, Anderson, and Waller as a reprisal for these reports.

88. BlueCare's actions violated the NDAA.

89. As a direct and proximate result of BlueCare's retaliatory discharge, Ellis, Anderson, and Waller have suffered the harms set forth in paragraphs 78, 79 and 80, *supra*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs Jill Ellis, Treda Anderson, and Quinton Waller respectfully request that this Honorable Court enter judgment against Defendant Volunteer State Health Plan, Inc. d/b/a BlueCare Tennessee providing the following relief:

A. Awarding special damages to Plaintiffs in the amount of $750,000.00;

B. Awarding compensatory damages to Plaintiffs, including but not limited to front pay, emotional distress, and humiliation, in an amount to be determined;

B. Awarding punitive damages to Plaintiffs;

C. Awarding pre-judgment and post-judgment interest to Plaintiffs;

D. Awarding attorneys' fees and costs to Plaintiffs;

E. Awarding such other relief as the Court may deem just and equitable.

Respectfully submitted this 3rd day of November, 2023.

          PLAINTIFFS JILL ELLIS, TREDA ANDERSON,
          AND QUINTON WALLER
          By Counsel

*s/ Alexis I. Tahinci*
Alexis I. Tahinci (TN BPR #031808)
Tahinci Law Firm PLLC
105 Ford Ave., Suite 3
Kingsport, TN 37663
Ph: (423) 406-1151
F: (423) 815-1728
alexis@tahincilaw.com
COUNSEL FOR PLAINTIFFS